UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARY KOMONGNAN,  )  <br>  )  <br>    Plaintiff,  )  <br>  )  <br>  v.  )  <br>  )  <br>U.S. MARSHALS SERVICE,  )  <br>  )  <br>    Defendant.  )  <br>  ) | Civil Action No. 06-909 (ESH) |

## MEMORANDUM OPINION

Plaintiff Mary Komongnan filed this *Bivens* action against the U.S. Marshals Service, alleging a violation of her Fourth Amendment rights during an alleged search of her home by several United States Marshals. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Defendant U.S. Marshals Service has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and (b)(1) for failure to state a claim and lack of subject matter jurisdiction. As explained herein, the Court grants defendant's motion to dismiss.

## BACKGROUND

According to plaintiff, on May 17, 2003, an unspecified number of U.S. Marshals arrived at her home in the District of Columbia to search for a fugitive named Ameer Culbreath, whom the Marshals stated was on the back porch of her home. (Compl. ¶¶ 1, 2.) Plaintiff states that she told the Marshals that Mr. Culbreath was already incarcerated at this time. (*Id.* ¶ 3.) The Marshals allegedly did not produce a search warrant, but plaintiff admits that she "consented to the search of her residence." (*Id.* ¶¶ 2, 4.) According to plaintiff, one Marshal went down into

her basement to search for the fugitive, and plaintiff thereafter went to the basement to inform the Marshal that Mr. Culbreath was already incarcerated. (*Id.* ¶¶ 5, 6.) When plaintiff reached the bottom of the basement stairs, the Marshal searching in the basement allegedly "slapped the magazine of his gun and pointed the weapon directly at [plaintiff] an told her to go upstairs . . . ." (*Id.* ¶ 7). Another Marshal also instructed her to come upstairs, which, according to plaintiff, "end[ed] the situation." (*Id.* ¶ 8) According to defendant, the U.S. Marshals Service "has no record of ever conducting a fugitive investigation for Mr. Culbreath at or near [p]laintiff's residence." (Def. Mot. at 2.) Defendant also states that Mr. Culbreath was considered a "violent" fugitive at the time. (Def. Mot. at 2.)

Plaintiff filed this suit against the U.S. Marshals Service on May 15, 2006, asserting a cause of action under *Bivens* for the violation of her constitutional rights, and requesting "[c]ompensatory damages which she has suffered as the result of having a pistol pointed at her." (Compl. at 2; Pl. Opp. at 1.) On August 31, 2006, plaintiff served the complaint on the U.S. Marshals Service, the U.S. Attorney General, and the U.S. Attorney for the District of Columbia. (*See* Dkt.3 [Affidavit of Service].) Defendant did not file an answer, but instead it has moved to dismiss plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant argues, *inter alia*, that (1) the doctrine of sovereign immunity bars this suit against an agency of the United States; (2) because a *Bivens* action does not lie against a federal agency, plaintiff has not named a proper defendant, and is now barred from doing so by the statute of limitations; (3) even if the plaintiff were to name the U.S. Marshal whom she alleges pointed the gun at her, plaintiff fails to state a constitutional claim under *Bivens*, and (4) the Marshal who allegedly pointed the gun would be entitled to a dismissal of this action on the

basis of qualified immunity. (Def. Mot. at 3, 6-11.)

In her opposition to defendant's motion to dismiss, plaintiff states unequivocally that "[t]his suit was intended to be a Bivens action against an unknown member of the U.S. Marshals Service" and seeks "to amend [the[ complaint to reflect such an action." (Pl. Opp. at 1.) Plaintiff offers no explanation for her failure to identify and name the Marshal whom she claims pointed a gun at her in the over three years since the alleged events occurred, except to claim that "the titling of the complaint is a misnomer." (*Id.* at 2.) Plaintiff also argues that "the act of physically pointing a weapon at her after she consented to the search of her home was arguabl[y] objectively unreasonable" because "removing her from the basement could have been accomplished with sharp commands." (*Id.* at 3.)

## ANALYSIS

### I.     Legal Standard

Defendant moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) respectively. Under Fed. R. Civ. P. 12(b)(6), dismissal is appropriate only where a defendant has "show[n] 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief.'" *In re Swine Flu Immunization Prod. Liab. Litig.*, 880 F.2d 1439, 1442 (D.C. Cir.1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The allegations in plaintiff's complaint are presumed true and all reasonable factual inferences should be construed in plaintiff's favor. *See Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995). Similarly, when, as here, the government attacks the existence of subject matter jurisdiction based on allegations in the complaint, "the Court considers the factual allegations of the

complaint in the light most favorable to the non-moving party." *Loughlin v. United States*, 230 F. Supp. 2d 26, 35-36 (D.D.C. 2002).

**I.     Plaintiff's Constitutional Claim against the U.S. Marshals Service**

In the absence of an express waiver, sovereign immunity precludes suits against the United States and its agencies, *see United States v. Mitchell*, 445 U.S. 535, 538 (1980), and it is well-established that "no cause of action for damages for constitutional violations -- whether called a *Bivens* action or not -- is to be implied against government agencies" *Taylor v. FDIC*, 132 F.3d 753, 768 (D.C. Cir. 1997); *see FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994).  Indeed, a *Bivens* cause of action was created in part *because* government agencies are immune from suit under the doctrine of sovereign immunity.  *See Meyer*, 510 U.S. at 485.  Plaintiff does not dispute that her *Bivens* claim is not properly brought against a federal government agency. Accordingly, plaintiff's *Bivens* claim against the U.S. Marshals Service must be dismissed for lack of subject matter jurisdiction.[1]

**II.     Plaintiff's Putative Constitutional Claim against the Unknown Marshal**

To save her complaint from dismissal, plaintiff now "seek[s] to amend [the] complaint" to name "an unknown member of the U.S. Marshals Service" as the sole defendant.  (Pl. Opp. at 1.)  Fed. R. Civ. P. Rule 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." Fed. R. Civ. Proc.

---

[1] The Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, provides a limited waiver of the federal government's sovereign immunity when its employees are negligent within the scope of their employment, and is the exclusive remedy for the liability of the United States for the torts of federal employees.  *See* 28 U.S.C. § 2679(b)(1).  However, plaintiff assures the Court that she "is not maintaining a federal tort claim against the United States," but instead is suing under *Bivens*.  (Pl. Opp. at 1.)

15(a). Because a motion to dismiss is not considered a responsive pleading for purposes of Rule 15(a), *see James V. Hurson Assoc., Inc. v. Glickman*, 229 F.3d 277, 283 (D.C. Cir. 2000), plaintiff is free to amend her complaint without leave of the Court. However, plaintiff has not done so, and thus her would-be claim against an unknown member of the U.S. Marshal Service is not presently before the Court.[2]

---

[2] In any event, defendant has also raised a substantial question regarding whether such an amendment would be timely under the three-year statute of limitations applied to *Bivens* actions in the District of Columbia. (Def. Mot. at 11; Def. Reply at 1-2.) As the alleged search giving rise to plaintiff's claim occurred on May 17, 2003, the limitations period ran on May 17, 2006 -- two days after plaintiff filed her complaint against the U.S. Marshals Service. The period for service of process of that complaint would extend to September 15, 2006. (*See* Dkt. 2 [Aug. 22, 2006 Order Directing Plaintiff to Complete Service of Process].) In order to be considered timely, therefore, plaintiff's proposed amendment of her complaint to name the unknown U.S. Marshal must satisfy the requirements of Rule 15(c) to "relate back" to her initial timely-filed complaint.

Rule 15(c) provides that an amendment to change the parties against whom a claim is asserted "relates back to the date of the original pleading," Fed. R. Civ. P. 15(c), if three conditions are met: (1) "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading," *id.* 15(c)(2); (2) "within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment . . . has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits," *id.* 15(c)(3)(A); and (3) within this same period, this party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party," *id.* 15(c)(3)(B). Rule 15(c) also states that "[t]he delivery or mailing of process to the United States Attorney . . . or the Attorney General of the United States . . . satisfies the requirement of subparagraphs (A) and (B) . . . with respect to the United States or any agency or officer thereof to be brought into the action as a defendant." *Id.* 15(c)(3).

Though the Court need not decide whether plaintiff's would-be amendment relates back under Rule 15(c), cases suggest that the "government notice" provision of Rule 15(c)(3) does not operate where government employees are being sued in their personal capacity. *See Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996). *But see Fludd v. U.S. Secret Serv.*, 102 F.R.D. 803, 805 n.4 (D.D.C. 1984). Furthermore, the weight of federal case law also holds that a "plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party'" as required by Rule 15(c)(3)(B), *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004), and thus "'John Doe' pleadings cannot be used to circumvent statutes of limitations." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468 (2d Cir.1995), *modified*, 74 F.3d 1366 (2d Cir.1996); *see also Wayne v. Jarvis*, 197 F.3d 1098, 1103-04 (11th Cir. 1999);

Moreover, even if plaintiff had properly amended her complaint to name an unknown member of the U.S. Marshals Service, that claim would also be unable to survive defendant's motion to dismiss.  Plaintiff titles her complaint "Complaint for Damages Based Upon Unreasonable Search." (Compl. at 1.)  But plaintiff acknowledges that she consented to the search of her residence, and does not allege that she withdrew that consent at any time.  (*Id.* ¶ 4.)  It is "well settled that one of the specifically established exceptions to the [constitutional] requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *see United States v. Harrison*, 679 F.2d 942, 946 (D.C. Cir. 1982).  Therefore, plaintiff has failed to allege a constitutional violation with respect to the alleged search of her home.  However, though she does not fully explain the nature of her constitutional claim, it appears from plaintiff's opposition brief that she objects to the alleged pointing of the gun at her as an unreasonable seizure of her person in violation of the Fourth Amendment.  (*See* Pl. Opp. at 3.)  Treating all the facts alleged in the complaint as true, and drawing all reasonable factual inferences in plaintiff's favor, the Court must conclude that her putative claim against the unknown U.S. Marshal for pointing his gun at her would fail because she does not make out a constitutional violation on the facts alleged and because the unknown officer would be protected by the doctrine of qualified immunity.

When a plaintiff sues a government agent in his individual capacity and the defense of

---

*Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998);  *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989); *Grigsby v. Johnson*, 1996 WL 444052, at *5-6 (D.D.C. 1996) ("[W]here the plaintiff fails to originally name a defendant because he lacks knowledge of their identity, it is not for purposes of Rule 15(c)(3)(B) a mistake entitled to relation back.").  *But see Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174-75 (3d Cir. 1977).  More importantly, however, such an amendment would be futile because the unknown Marshal is protected by the doctrine of qualified immunity, as discussed *infra*.

qualified immunity is raised, that plaintiff must overcome that defense in order to survive a Rule 12(b)(6) motion to dismiss. *See Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Indeed, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). When assessing a qualified immunity defense, the first inquiry a court must make is whether a constitutional right would have been violated on the facts alleged. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006). If this question is answered in the affirmative, the federal officer must demonstrate that "a reasonable officer could have believed" that the actions were lawful "in light of clearly established law and the information the . . . officer[] possessed." *Anderson*, 483 U.S. at 641; *see Barham*, 434 F.3d at 572; *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991) (noting that "[o]fficials are liable for committing constitutional torts . . . only if they knew, or were unreasonable in not knowing, that their behavior violated the Constitution.").

      Plaintiff apparently would argue that the unknown Marshal used excessive force when he pointed his gun at her while directing her out of her basement after she had come upon him while he was on his knees searching for a violent fugitive. (Pl. Opp. at 3.) Taken in the light most favorable to the plaintiff, the facts alleged do not show that the unknown Marshal's conduct

violated plaintiff's Fourth Amendment rights. Claims of excessive force in the course of a seizure are to be judged under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1998). The pertinent question is "whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham*, 490 U.S. at 397. Because "'[law enforcement] officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation,' . . . the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier*, 533 U.S. at 205 (quoting *Graham*, 490 U.S. at 396-97) (internal citation omitted). In other words, excessive force claims are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred, considering such factors as "the severity of the crime at issue" and "whether the suspect poses an immediate threat to the safety of the officers." *Graham*, 490 U.S. at 396.

     It is clear that law enforcement officers have the authority to detain occupants of a residence while a lawful search is being conducted in order to minimize the risk of harm to the officers and to facilitate the completion of the search. *See Michigan v. Summers*, 452 U.S. 692, 702-03 (1981); *see United States v. Calloway*, 298 F. Supp. 2d 39, 48 (D.D.C. 2003). Indeed, the section in the Policies and Procedures Manual of the U.S. Marshals Service on Fugitive Investigations directs that "[a]fter having entered the premises [to be searched], deputies should take whatever reasonable steps necessary to protect themselves," and "may control the movements of persons found inside the premises." (Def. Mot. Ex. B.) As the complaint alleges,

the unknown officer was alone on his knees in plaintiff's basement, searching for a fugitive whom the Marshals believed to be somewhere in the residence. (Compl. ¶¶ 2, 5, 7.) It is undisputed that the fugitive in question was known by the U.S. Marshals to be "violent." (Def. Mot. at 2; Pl. Opp. at 2.) Thus, when plaintiff came upon the unknown Marshal in the basement, it was reasonable for him to believe that the brandishing of his weapon was necessary to protect himself. Furthermore, the alleged seizure was brief and relatively unintrusive. Plaintiff does not allege that any Marshal touched her, nor does she allege that her liberty was ever completely restrained. Plaintiff simply alleges that the Marshal searching in the basement pointed his gun at her while directing her to return upstairs, and a second Marshal also instructed her to come upstairs, thus "ending the situation." (Compl. ¶ 7-8). Based on these facts, the Court concludes that the level of force used to remove plaintiff from her basement was objectively reasonable in the context of a search for a violent fugitive, and that plaintiff's Fourth Amendment rights were not violated.[3] *See Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995) (holding that an officer's "conduct in drawing his gun and pointing it at [a suspect], without any indication [that officer] intended or attempted to fire the gun, does not rise to the level of a constitutional violation," and that officer's actions were objectively reasonable under the circumstances). The unknown officer would therefore be entitled to qualified immunity with respect to the actions alleged in

---

[3] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. But even assuming that plaintiff could establish a violation of her Fourth Amendment rights on the facts alleged, the unknown officer would be shielded by qualified immunity because, based on the facts alleged in the complaint, "a reasonable officer could have believed" that the actions were necessary to protect himself from the fugitive he believed to be in the residence, and lawful "in light of clearly established law and the information . . . [he] possessed." *Anderson*, 483 U.S. at 641. Under the precedent discussed above, it is clear that a reasonable officer in the unknown Marshal's position would not have believed that this behavior violated the Constitution.

plaintiff's complaint.

## CONCLUSION

Accordingly, because the Court does not have subject matter jurisdiction over plaintiff's constitutional claims against the named defendant, plaintiff fails to state a constitutional violation on the facts alleged, and the putative unknown defendant would be shielded from liability by the doctrine of qualified immunity, defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is dismissed with prejudice.  A corresponding Order accompanies this Memorandum Opinion.

                                                /s/
                                 ELLEN SEGAL HUVELLE
                                 United States District Judge

Date: December 18, 2006